ESTATE OF FÉLIX MATOS ASENCIO; EX PARTE ADELINA ASENCIO PAGÁN, Petitioner and Appellant.

No. 8881. Argued May 1, 1944.—Decided July 24, 1944.

*José Sabater* for appellant. *Enrique Báez García* for Mercedes Díaz.

Mr. Justice Todd, Jr., delivered the opinion of the court.

On September 22, 1942, the appellant, Doña Adelina Asencio Pagán, filed a petition in the District Court of Mayagüez seeking the appointment of a judicial administrator for all the property left by her son, Félix Matos Asencio, at his death. She alleged that said property was in the hands of Mercedes Díaz, who, according to the petitioner, was not entitled to participate in the same because she had never been married to Félix Matos Asencio. Mercedes Díaz appeared and alleged that she was the widow of the deceased, and thereupon the lower court ordered the judicial administration sought and appointed said Mercedes Díaz as administratrix. She accepted the same, was sworn in, and after

974

furnishing bond which was approved she filed an inventory which was notified to the appellant. On March 4, 1943, the appellant moved the lower court to declare void the appointment of administratrix made in favor of Mercedes Díaz on the ground that she was .not the widow of Félix Matos Asencio.

At the hearing of the motion Mercedes Díaz adduced evidence consisting of her own testimony to the effect that she had married Félix Matos Asencio at the end of the year 1923 in the "city" of Brooklyn, New York, in a small Methodist church; that she was given a large diploma, which she has lost; that said marriage was never dissolved and that during the same they had acquired property. She also offered as documentary evidence four public deeds executed in 1929, 1930, and 1937, wherein Félix Matos, one of the parties thereto, stated that he was married to Mercedes Díaz. By virtue of these deeds Félix Matos acquired the property which is now the subject matter of the judicial administration. Finally, she offered a copy of the death certificate of Félix Matos Asencio which, according to her testimony, was filled in by an employee of the Presbyterian Hospital, where Matos died, in which certificate it was stated that Félix Matos Asencio was married and that his wife was 49 years of age.

Appellant's evidence consisted of a letter which is set out in the margin [1] and of her own testimony to the effect that Mercedes Díaz lived in Santurce with her son, but that he always told her that he was not married to her, although she does not know whether he had married her; and of the

---

[1] "City of New York—Department of Health—295–315 Flatbush Avenue Extension.—Borough of Brooklyn. October 20, 1942.

"County Clerk, Hall of Records, Brooklyn, N. Y. Dear Sir: Enclosed please find the letter from José Sabater requesting a copy of the marriage certificate of Félix Matos Asencio and Mercedes Díaz for the year 1923. This office has no record of this marriage. Very truly yours, (Stamped) Frank A. Calderone, M. D. —Secretary.—Enc. G.

"We have no record of this marriage in our office. Search made 1921–1922–1923 and 1924. (Signed) Francis J. Sinnott, County Clerk, Kings County."

testimony of Santos Matos Asencio, a brother of Félix Matos Asencio, to the effect that the latter and Mercedes Díaz lived together, but that Mercedes Díaz had once said in front of him that Félix Matos Asencio "could not forbid her to go the States, because he had no right whatsoever, because she was not married to him." This incident was denied by Mercedes Díaz on cross-examination.

As a matter of law, petitioner argued that since §87 of the Civil Code (1930 ed.) provides that in the event of "A marriage contracted in the United States or in a foreign country, where such acts are not required to be registered in a regular and authentic manner, the said marriage may be proven by any of the means of proof admitted by law," and inasmuch as Mercedes Díaz maintains that her marriage to Félix. Matos Asencio took place in the City of New York, where there exists a regular or authentic record of marriages, the only evidence admissible to establish said marriage was a copy of the marriage certificate.

The lower court dismissed appellant's motion and decided that, notwithstanding the provisions of said Section: ". . . the court can not avoid the fact that marriages may have taken place in the United States without it being possible for one of the spouses to obtain a certified copy of the record thereof. To maintain that this statutory provision is an inflexible rule in these cases would create difficult and even harmful situations in cases where, for reasons beyond the power of the parties, the corresponding certificate could not be obtained." It further held that from the public deeds introduced in evidence it appears that Félix Matos Asencio and Mercedes Díaz "conducted themselves as husband and wife" and, therefore, in the absence of evidence to the contrary, the rebuttable presumption provided in subdivision 29 of §102 of the Law of Evidence, to the effect 'that a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage,'" is applicable.

The appellant herein alleges that the lower court erred in applying to the present case subdivision 29 of §102 of the Law of Evidence and in ignoring the positive provision of the Civil Code.

Before entering into a discussion of the legal question involved in this appeal and the decision thereof, it is deemed advisable to state that the documentary evidence offered by the appellant, that is, the letter of the Secretary of the Health Department, is not even signed by the latter and, although the note of the County Clerk of Kings County is signed by him, yet there is no certification whatsoever as to its authenticity. In other words, said letter can not even be considered as a negative certification of the facts stated therein. Notwithstanding that, said letter was admitted without any objection whatsoever from the adverse party.

Like §87, *supra*, §§85 and 86 of the Civil Code [2] establish not only the general rule as to the mode of proving a marriage in Puerto Rico, but also its exceptions. The general rule is that the evidence should consist of a certified copy of the marriage certificate appearing from the civil registry. This evidence is classified by Colín and Capitant in their work *Derecho Civil* (vol. 1, p. 335) as "preconstituted evidence," contained in the records of the registry. Section 85 provides two exceptions to the general rule as to marriages contracted in Puerto Rico: 1, when the marriage took place before the Law of Civil Registry went into effect, it shall be proved in the manner established by former laws;

---

[2] "Section 85.—Marriages solemnized before January the first, 1885, when the law of Civil Registry took effect in Porto Rico, shall be proven in the manner established by former laws.

"Those contracted afterwards shall be proven only by certification from the book of marriages. If this book shall have disappeared, any competent proof shall be admissible.

"Section 86.—In the cases referred to in the preceding section, the uninterrupted living together of the parents as husband and wife together with the record of the birth of their children as legitimate children, shall be one of the means of proof of the marriage of the parents, unless it be shown that, either of them was bound by a previous marriage."

and 2, if the book of the marriages provided for by this Act shall have disappeared, any competent proof shall be admissible. Section 86 establishes another exception in favor of legitimate children (1 Manresa *Código Civil,* 316 *et seq.*) that is, if the book of marriages shall have disappeared the marriage may be proven by "the uninterrupted living together of the parents as husband and wife together with the record of the birth of their children as legitimate children." Section 87, *supra,* which is the one involved in this case, establishes the exception as to marriages contracted in the United States or in a foreign country where such acts are not required to be registered in a regular and authentic manner. In that event the said marriage may be proven "by any of the means of proof admitted by law."

It is a fact admitted by the parties in this case that in the city of New York of which Brooklyn is a county there exists a registry of marriages. Appellant maintains that in such case the only evidence admissible in this case to establish the marriage of Félix Matos is a certified copy of the certificate appearing in said registry, inasmuch as the exception contained in §87 is not applicable to the case at bar. The question is a novel one in this jurisdiction. We have not found a single case decided by this court construing §87, and none has been cited by the parties.

 Nevertheless, we believe that said Section may and should be construed in connection with §250 of the Civil Code (1930 ed.), which provides that:

"Section 250.—The records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a litigation is instituted before the courts."

 As may be seen, this Section contains other exceptions to the general rule, that is, proof of the certificates may be substituted by other evidence: 1, when said certificates have never existed; 2, or when they should have dis-

appeared from the books, and 3, when litigation is instituted before the courts.

The case at bar falls within the scope of exceptions 1 and 3. The letter offered by the appellant and admitted without any objection tends to show that the marriage certificate of Félix Matos and Mercedes Díaz does not exist in the Civil Registry of New York. But apart from this, it is an indisputable fact that a litigation has been instituted before courts in connection with the existence of the marriage.

There is a marked difference between the language of §85 and that of §250 of the Civil Code. The former provides that marriages contracted after the Law of Civil Registry went into effect shall be proven only by certification from the book of marriage and "if this book shall have disappeared, any competent proof shall be admissible," while the latter, as we have seen, refers not only to cases where the books shall have disappeared, but also to those cases where the records "have never existed." In his commentaries on §327 of the Spanish Civil Code, equivalent to §250 of our Code (op. cit., vol. 2, p. 805), Manresa admits that this Section should be construed as containing additional exceptions in the admission of supplementary evidence of civil status in connection with §53 of the Code (§85 of our Code) and among others he lists the following exception: "When the certificates of the registry have never existed because of failure to have requested recordation thereof or because even though requested no record was entered in the books."

To the same effect Colín and Capitant, in their commentaries on §46 of the French Civil Code,[3] similar but not equivalent to our §250, state the following:

[3] "When the records should have never existed or when they should have disappeared, proof thereof shall be admitted by means of documents as well as by witnesses; and, in these cases, marriage, birth and death shall be established by means of the documents of the deceased parents as well as by means of witnesses."

"Thus, in a case of *force majeure,* an exception is made to the rule of preconstituted evidence, by admitting any other evidence pertinent to the case. And this, on the other hand, is nothing more than the application of the common law relating to evidence (Sec. 1,348, 4th) and of this sound and simple rule: no one is bound to do the impossible.

" * * * * * * *

"Finally, there remains another situation. Registers are well kept in appearance; there is no showing of having failed to record some certificate; yet, it is alleged that a fact concerning the civil status of a person does not appear in the books *either because it has not been declared before the officer of the civil status, or because the latter has failed to record the certification in the book.* May the interested parties in this case be permitted to resort to other subsidiary means of proof admitted by Section 46?

"We hesitate greatly in answering this question affirmatively. Relying on a similar allegation, fraud could be committed with greater ease than in the preceding cases; an adventurer, alleging the nonexistence of the corresponding records, could try to secure a fraudulent civil status with the assistance of false witnesses and documents.

"However, the negative solution would be too strict: The fact alleged by the parties may be exact. And if this were the case, how can a person be deprived of the opportunity to prove a fact in connection with his civil status or with that of his relatives? It would be incumbent on the judges to weigh the truthfulness of the complaint and reject the same if they found it groundless. It should not be forgotten that in France judges are not bound to accept the evidence adduced, except in those cases where preconstituted evidence is involved; they only decide in accordance with their innermost conviction. They may refuse to admit an alleged fact, even though its existence be corroborated by several witnesses." (Italics ours.) (*Op. cit.,* vol. 1, pp. 822, 824.)

These text writers admit, therefore, that even though the language of the French Code does not cover the specific case of the nonexistence of the record, yet subsidiary evidence concerning the civil status may be admitted, it being incumbent on the judges to weigh the same.

If we have taken some time to make these citations our only purpose is to show that in other jurisdictions where our Law of Evidence does not prevail, evidence "supplementary or subsidiary," is admitted to establish in certains cases the facts relating to civil status which for some reason do not appear in the corresponding registry. However, in Puerto Rico, in matters relating to proofs, there has prevailed since 1905 the Law of Evidence and this court, since 1913 in an action of filiation, *Camacho* v. *Balasquide*, 19 P.R.R. 564, construing §320 of the Civil Code, now §250, *supra*, has held the following:

"In regard to section 320 of the Civil Code and the proper construction to be given thereto, it may be regarded as an elementary law, and that the legal principle therein involved *is modified by the Law of Evidence*. The certificate of inscription made in the civil registry in regard to the birth of the child can not be considered as an incontrovertible document. It is evidence, it is true, of its contents, but such evidence is only *prima facie*. Our law of evidence, in section 71, declares that entries made in public or other official books or records by a public officer in the performance of his duty are *prima facie* evidence of the facts stated therein, and section 11 of the same law of evidence tells us what *prima facie* evidence is, and defines it to be that which suffices for the proof of a particular fact until the same is contradicted and overcome by other evidence, and gives as an example that the certificate of a recording officer is *prima facie* evidence of a record, but it may afterwards be rejected on proof that there is no such record. Then this certificate, made by the proper officer, in showing the inscription in the civil registry of the birth of the child is only *prima facie* evidence and not an indisputable document. Such being the case, the plaintiff could properly offer oral proof to show that the contents of the same were incorrect. This proposition is supported by 2 Wigmore on Evidence, sections 1335 and 1336, and Jones on Evidence, section 511 and the authorities cited in both of these textbooks.[4] (Italics ours.)

---

[4] Subsequently we have ratified the doctrine laid down in *Assise* v. *Court*, 22 P.R.R. 518 (an action of nullity of marriage); *Lebrón* v. *Lebrón*, 31 P.R.R. 842 (damages in an action for rape); *People* v. *Hernández*, 34 P.R.R. 313 (aggravated assault and battery). However, in *Burgos* v. *Medina*, 35 P.R.R. 485, in an action of revendication it was held, copying from the syllabus, that "the

Moreover, in *Gerena v. Sales et al.*, 32 P.R.R. 334, which was a suit to annul an acknowledgment of a child, it was held as follows:

"The appellants, husband and wife, assign various errors. The first is that the court committed error in admitting oral evidence of the marriage of the defendant Francisco Sales Ayala with another woman than his present wife at the time of the conception of the child in this case. Before this oral evidence was admitted the complainant had offered in evidence several certificates from Lares and San Sebastián negativing the existence of any entry of marriage of the defendant with his alleged former wife. Although objections were made to these certificates there was none to their negative form and their admission is not assigned as error. So that secondary evidence of the marriage was admissible. When the certificate of marriage is unavailable marriage may be proved by reputation and presumption, supposing that in Porto Rico marriage ordinarily should be proved from the civil registry. . . ."

In the State of New York, as in Puerto Rico, the certificates from the Civil Registry constitute only *prima facie* evidence of their contents. See §20(*a*) of the Domestic Relations Law, which provides in its pertinent part that "Any transcript of the record of a marriage when properly certified by the state commissioner of health or person authorized to act for him, shall be *prima facie* evidence in all courts and places of the facts therein stated." In said State it has been held, for example, in *Farmers' Loan & Trust Co. v. Wagstaff*, 185 N.Y.S. 812, in an action of a woman who claimed to be the widow of the deceased, that former statements of the deceased were admissible, including a federal income tax return tending to show that he was single; and

preference established by § 320 of the Civil Code is not incompatible with § 35 of the Law of Evidence, and when there is no reason why the rule prescribed in the Civil Code should not be enforced the admission of oral evidence to prove the civil status of the parties in the suit constitutes prejudicial error." Notwithstanding this, it was stated in the opinion that the decision of the court should not be construed in the sense of overlooking the possibility of making more flexible said rule in proper cases, as was done in the cases of *Camacho* and *Lebrón*.

in *In re Seymour*, 185 N.Y.S. 373, that public deeds executed by a man or woman wherein it appeared that the woman was the wife of the man "are solemn acknowledgments by the man of his marriage."

According to the authorities cited, a certified copy of a certificate from the Civil Registry in Puerto Rico as well as in New York constitutes *prima facie* evidence of its contents and said evidence may be controverted. Therefore, the fact that a record does not appear from the civil registry may not be maintained in any event as incontrovertible evidence that the corresponding act did not take place. When as in the instant case litigation is instituted before the courts to decide whether or not the marriage existed, the so-called "preconstituted" evidence of the records of the registry may be replaced by any other evidence, it being then incumbent on the courts to determine whether said evidence is sufficient to establish the essential fact.[5] Moreover, in the case at bar we have the fact that the documentary evidence adduced by the appellant tends to show that the marriage certificate in question does not exist in the Civil Registry of Brooklyn.

There only remains to be considered the evidence introduced by both parties. In the first place, we have the testimony of Mercedes Díaz to the effect that she married Félix Matos in a Methodist church in Brooklyn, twenty years ago; that she received a diploma which has disappeared; that they have never been divorced and that they acquired property during the marriage. The public deeds introduced in evidence which were executed many years previously and in which it is stated that Mercedes Díaz and the deceased were married have the probatory value of establishing the presumption of conjugal property acquired by Félix Matos, which is the only subject matter of the judicial administra-

---

[5] The construction given to the phrase "when litigation is instituted before the courts" as used in § 250, *supra*, is similar to that given by the Supreme Court of Cuba in several judgments cited in Núñez, *Código Civil*, vol. 2, p. 452.

tion.[6] Moreover, these deeds tend to corroborate the testimony of Mercedes Díaz that she was married to Félix Matos. Furthermore, the oral evidence of the appellant as well as that of the administratrix show that Félix Matos and Mercedes Díaz lived together for about twenty years acting as husband and wife in the community in which they lived.

We are of the opinion that the presumptions established by all this evidence as a whole, that is, the conjugal character of the property and the conduct of Félix Matos and Mercedes Díaz acting as husband and wife for twenty years, the act of Félix Matos in executing the deeds wherein he stated that he was married to Mercedes Díaz being part of said conduct, have not been destroyed by the above-mentioned letter. Relying on these presumptions, the lower court did not err in maintaining that, as to the judicial administration of the property of Félix Matos, Mercedes Díaz was entitled as the presumed widow to continue as such administratrix. Even though said court could have decided if, according to the evidence, in its opinion, it had been affirmatively proved that Félix Matos and Mercedes Díaz were married, it failed to do so. Therefore it should be understood that the scope of the decision appealed from, as well as of the opinion, is confined and limited to the fact that the presumption of the existence of the marriage was not destroyed by the evidence introduced by the appellant. The sufficiency of the evidence, in any specific case, to establish the fact of the marriage, in the absence of the certificate of the corresponding registry, not as a presumption which arises from documents or actions but as a possible fact, is a question which should be carefully considered and weighed by the court before which the question is raised.

The order appealed from will be affirmed.

---

[6] The property acquired by virtue of said deeds have the presumption of being conjugal property, §1307 Civil Code; and we have decided that not even the supposed husband may obtain a change in the registry of property of the record establishing said presumption by the mere fact that he should state in a subsequent deed that he was not married. See *Martínez* v. *Registrar*, 62 P.R.R. 832.